**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DIMARI TERRY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**OFFICER J. DUKE, LT. SANDY WALKER, LATOYA HUGHES, ANTHONY WILLS, SGT. ANTHONY B. JONES, JOHN DOE #1 NORTH 2 FIRST SHIFT SERGEANT, JOHN DOE #2 NORTH 2 FIRST SHIFT LIEUTENANT, and JOHN DOES NORTH 2 OFFICERS,**<br><br>**Defendants.** | **Case No. 3:26-cv-00673-GCS** |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Dimari Terry, an inmate of the Illinois Department of Corrections ("IDOC"), who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 9), and the limited consent to the exercise of Magistrate Judge jurisdiction by the IDOC and the medical providers, as set forth in the Memoranda of Understanding between the Court and these entities.

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

On May 31, 2024, Terry sought treatment for his mental health after spending the night in a cell with a broken light. (Doc. 1, p. 6). He informed Correctional Officer J. Duke that he wished to speak to a crisis team, but Duke merely told him off and continued with his rounds. *Id*. In response, Terry swallowed 20 different medications while Duke was watching in an attempt to force a crisis team intervention. *Id*. Instead, Duke sprayed Terry in the face with mace, causing him to fall to the ground and to struggle to breathe. *Id*. Duke handcuffed Terry; then Duke and other officers steered him through the unit to the North 2 infirmary. *Id*. Terry contends he could not see due to the mace, and the officers steered him into the walls and cell bars, causing his face to hit several objects along the way. *Id*.

Once in the infirmary, the officers forced his face into a stream of water. (Doc. 1, p. 6). Terry tried to yank his head out of the water to keep from drowning. The officers stripped him naked and left him on the floor. *Id*. They did not send him to the hospital despite Terry overdosing on numerous medications. He remained covered in mace. *Id*. When Terry learned the officers were going to take him to a segregation cell, he proclaimed he was suicidal and needed to be placed on suicide watch. *Id*. He informed them of his suicide attempt with the medications and indicated he needed medical attention. *Id*. The officers noted they didn't want to handle the paperwork, and the following shift could deal with Terry. *Id*.

The officer took him to a cell, but Terry was still covered in mace because he was not allowed to shower before he was placed in the cell. (Doc. 1, p. 6). Terry alleges he did not receive a meal tray that shift and was not allowed to shower until five days later. Terry alleges he cried out for help because of the pain from the mace in his open wounds and the nausea from overdosing, but he failed to receive any medical care until June 18, 2024, when he received medications for an overactive stomach. *Id*. at p. 6, 8. He wrote an emergency grievance about the incident to make administrative officials aware of the constitutional violations; he also requested protection from retaliation. *Id*. at p. 8.

At some point, Terry was moved back to his former cellhouse and was again under the supervision of J. Duke. (Doc. 1, p. 8). Terry alleges he experienced harassment and retaliatory conduct from Duke. On October 26, 2024, while at the showers, Duke searched his cell and claimed he found a weapon next to Terry's inmate ID despite Terry claiming that he had his ID with him in the showers. *Id*. Terry alleges Duke fabricated the ticket in retaliation for the emergency grievance Terry wrote against him. *Id*. Terry also learned that Duke distributed Terry's personal property to another inmate. *Id*. Terry alleges that he was not allowed to have a hearing or have a chance to plead not guilty. *Id*. Instead, Lieutenant Sally Walker found him guilty of the charge and sentenced him to 1 year in segregation. *Id*. Terry notes that Anthony B. Jones and Anthony Wills also signed the ticket.

Terry again wrote a grievance regarding Duke and seeking protection from him. (Doc. 1, p. 8). He alleges that Warden Anthony Wills and Director Latoya Hughes are liable for Duke's actions because they supervise him. *Id*. at p. 9.

Terry alleges that after this incident he went eight months without a disciplinary ticket. (Doc. 1, p. 9). On September 10, 2025, Duke approached Terry's cell, directed him to cuff up, and directed him to the bull pen. *Id*. Duke directed Terry to remove his clothes and then the officer sprayed Terry with mace aiming initially at his genitals. *Id*. Duke claimed that he was trying to stop Terry from swallowing (there is no indication what Terry had in his mouth), but Terry contends there was no justification for spraying his genitals. *Id*. Terry was then transported to a cell that lacked a bedroll and working water. *Id*. The cell was covered in garbage and feces. *Id*. Duke acted as supervisor of this gallery and for a week denied Terry access to a bedroll, shower, or property. *Id*. Terry alleges that officers "preyed on me" during this time, and he sought to draw attention to his torture by setting fires on several occasions. *Id*. He filed a grievance and was issued another disciplinary ticket related to the September 10th incident, *i.e.*, a ticket for possessing drugs and/or drug paraphernalia. *Id*. at p. 9-10. Terry alleges the new disciplinary ticket was retaliatory because it was issued forty days after the incident, well beyond the date allowed for the issuance of tickets and issued after he filed a grievance. *Id*. at p. 10. Terry went before the adjustment committee on this ticket, and Sandy Walker found him guilty, giving him an additional six months in segregation. *Id*. He alleges that Walker violated his due process rights on this ticket. *Id*.

## PRELIMINARY DISMISSALS

Terry identified several John Doe officers who he alleges used excessive force on him and failed to obtain medical care for him. But he merely identifies them as a group of John Doe officers without providing any description or even the number of officers

present during the May 31st incident. Although Terry may certainly proceed against specific John Does (*i.e.* John Doe #1 officer first shift, John Doe #2 officer second shift, etc.), his claim against an unknown number of John Doe correctional officers is too generic to state a viable claim.

Terry also identifies John Doe North 2 First Shift Sergeant and John Doe North 2 First Shift Lieutenant as defendants. He argues they used excessive force against him. (Doc. 1, p. 11). But he fails to allege how each officer was personally involved in a constitutional violation. He merely states that after the alleged assault by unknown officers, he was taken to a cell without first being able to shower. He then identifies the sergeant and lieutenant in parentheses. *Id*. at p. 6. But it is not clear if these two officers were also involved in the use of force or whether these officers participated in or directed his placement in a specific cell. His allegations regarding each officer's involvement in the use of force incident are too vague and fail to state a claim. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). *See also Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (stating that "[t]o recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.").

Terry also alleges that Warden Anthony Wills and Latoya Hughes are liable because they supervise Duke. He also alleges they kept housing him near Duke and exposing him to further harm. But there are no allegations to suggest that either Wills or Hughes were aware of Terry's interactions with Duke or personally involved in his placement. They cannot simply be liable as supervisors because there is no *respondeat superior* (or supervisory) liability under Section 1983. *See Sanville v. McCaughtry*, 266 F.3d

724, 740 (7th Cir. 2001); *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). *See also Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017) (stating that "[p]ublic officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). Nor can they be liable for simply denying his grievances. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Burks*, 555 F.3d at 595 (noting that there is no "free-floating obligation to put things to rights").

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **First Amendment retaliation claim against J. Duke for issuing false disciplinary tickets against Terry in retaliation for Terry's grievances.**

**Count 2:** **Eighth Amendment excessive force claim against J. Duke for his use of force against Terry on May 31, 2024.**

**Count 3:** **Fourteenth Amendment claim against J. Duke, Sandy Walker, Anthony B. Jones, and Warden Anthony Wills for issuing a false disciplinary ticket on October 26, 2024, and finding Terry guilty without due process.**

**Count 4:** **Fourteenth Amendment claim against J. Duke and Sandy Walker for issuing a false disciplinary ticket on October 20, 2025, and finding Terry guilty without due process.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

**Counts 1 and 2**

At this stage, Terry states viable claims for retaliation and excessive force against J. Duke. He alleges that J. Duke attacked him with mace and hit his head into the wall. He also alleges that Duke issued disciplinary tickets in retaliation for Terry's grievances against Duke. Thus, Counts 1 and 2 shall proceed against J. Duke.

**Counts 3 and 4**

Terry's claims in Counts 3 and 4 focus on two separate tickets. Terry received a disciplinary ticket on October 26, 2024, for a weapon (Count 3) and received a second ticket on October 20, 2025, for drugs (Count 4). He alleges that both tickets were false and officials violated his due process rights in finding him guilty.

To state a due process claim, an inmate must allege "(1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). An inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In situations where an inmate complains about discipline in which he received segregation

---

2 *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

constituting an atypical and significant hardship (but not the loss of good-time credit), the disciplinary proceedings are subject to an informal due process inquiry. *See Ealy*, 109 F.4th at 965 (citing *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)). Informal due process requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in either a written statement or hearing. *See Ealy*, 109 F.4th at 966.

As to the disciplinary ticket issued on October 26, 2024 (Count 3), Terry alleges he received 1 year in segregation. Although he fails to describe the conditions he experienced in segregation during his entire segregation term, he does allege that at one point he was placed in a cell that was covered in garbage and feces. His stint in segregation could be considered atypical and significant. Terry also indicates he received notice of the ticket but alleged he was not allowed to have a hearing nor was he given a chance to plead not guilty. (Doc. 1, p. 8). At this early stage, Terry states a viable due process claim for the October 2024 ticket due to the lack of an opportunity to present his views.

Turning to the October 2025 ticket, Terry alleges he received six months in segregation. But even assuming that the length in segregation alone was atypical and significant, it appears that Terry received all the process that was due in this case. He alleges he was informed of the ticket but takes issue with the ticket being served forty days after the incident, which was a violation of administrative directives on disciplinary tickets. But a violation of an administrative directive does not violate the constitution. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003). Here, Terry acknowledges receiving

notice of the ticket and speaking with Sandy Walker at the hearing on his ticket. Thus, he received all the process that was due under the informal due process requirements. Count 4 is thus **DISMISSED without prejudice**.

## MOTION FOR COUNSEL

Terry recently filed a motion requesting the recruitment of counsel (Doc. 13) because he alleges that he lacks the necessary materials to litigate his case. But given the early stage of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See, e.g.*, *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) (stating that "until the defendants respond to the complaint, the plaintiff's need for assistance of counsel . . . cannot be gauged.").[3] Further, there is nothing currently pending that would require counsel. Once defendants have been served and they file answers, the Court will enter a scheduling order setting forth the next steps in the litigation process. If Terry experiences difficulties in litigating the case at that time, he may submit another request for counsel. At this time, his motion is **DENIED without prejudice**.

## DISPOSITION

For the reasons stated above, Counts 1 and 2 shall proceed against J. Duke. Count 3 shall proceed against J. Duke, Sandy Walker, Anthony Jones, and Anthony Wills. All other claims and defendants are **DISMISSED without prejudice**.

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

The Clerk of Court shall prepare for J. Duke, Sandy Walker, Anthony Jones, and Anthony Wills: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Terry. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Terry, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Terry, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless

of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Terry is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED: November 4, 2026.**

Digitally signed by Judge Sison
Date: 2026.11.04 14:03:18 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**